CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

MAR 0 8 2013

JULIA C. DUDLEY, CLERK
BY: /s/
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| BETTY HARTMAN, | Civil Action No. 7:12-cv-00199 |
| Plaintiff, | **MEMORANDUM OPINION** |
| v. | By: Glen E. Conrad |
| RETAILERS & MANUFACTUERS DISTRIBUTION MARKING SERVICE, INC., ET AL. | Chief United States District Judge |
| Defendants. | |

This case is before the court on the defendants' motions to dismiss. For the reasons explained below, the court will deny in part and grant in part the motions filed by Cosmetic Essence, Inc. and Retailers & Manufacturers Distribution Marking Service, Inc, and will grant SunStates Security LLC's motion in its entirety.

## I. Factual Background

This civil suit arises from a violent sexual assault that occurred in the parking lot outside the victim's and her attacker's shared place of employment. The plaintiff, Betty Hartman, was assaulted by Nathaniel Martin after leaving work one night. Each was employed by co-defendants Cosmetic Essence, Inc. ("CEI") and Retailers & Manufacturers Distribution Marking Service, Inc. ("R&M").

CEI owns a cosmetic manufacturing plant in Roanoke. CEI and R&M were parties to a labor agreement under which R&M provided staffing at the facility. The agreement required R&M to conduct background checks on all applicants before placing any employees at the facility. The agreement also provided that CEI and R&M shared the responsibility of ensuring

that the facility provided safe working environment. In 2002, CEI entered into a security agreement with SunStates LLC ("SunStates"), whereby SunStates would provide security for the facility, including the parking lot. The plaintiff alleges that SunStates acted at the behest of R&M and CEI, and that those two companies had control over how SunStates carried out its security obligations.

CEI hired Martin on February 25, 2010, shortly after the plaintiff was hired. At the time, Martin was a registered sex offender, having been convicted of aggravated sexual battery of a child under the age of 13 in April of 2008. Neither CEI nor R&M conducted a background check on Martin prior to hiring him. The plaintiff alleges that the defendants had a practice of hiring sex offenders and other convicted criminals because they provided a source of cheap labor. The plaintiff also alleges that the defendants knew or should have known that there was a significant history of crime in the vicinity of the facility. Additionally, the plaintiff alleges that the parking lot was dimly lit and had poor visibility. The plaintiff states that these conditions created an ongoing risk of sexual assault at the facility that R&M and CEI knew or should have known about.

Prior to the incident giving rise to the suit, the plaintiff complained to her floor supervisor about Martin making vulgar comments and unwanted sexual advances to her. The supervisor told the plaintiff that he would take care of the problem, and he would try not to schedule the two to work together. The plaintiff states that she usually tried to have friends escort her out to her car after work because of concerns for her safety, particularly a fear of Martin.

During her shift on May 11, 2010, Martin assaulted and battered the plaintiff on multiple occasions by touching her leg, thigh, and groin area. After the plaintiff's shift ended that night, she waited until Martin clocked out and left the facility so she could avoid meeting him in the

parking lot. After he left, she exited the building through a different door and proceeded to her car alone. As she approached her car, Martin pulled up alongside her and engaged in a violent, sexual assault that lasted fifteen minutes. The plaintiff repeatedly screamed for help in the middle of the parking lot, but no one came to her aid. Ms. Hartman alleges that SunStates was supposed to have at least three security officers on site at all times, and ordinarily had one stationed in the parking lot. Additionally, SunStates was expected to monitor the facility via closed circuit surveillance cameras. However, on the night of the incident, there were no guards in the parking lot, and no one came to offer help at any point during the fifteen minute assault.

The following day, the plaintiff called the police to report the assault, and Martin was arrested. He later pled guilty in Virginia state court to a charge of rape with an animate object. The plaintiff attempted to return to work a week after the incident but was forced to resign because of emotional distress resulting from the incident.

The plaintiff alleges five claims for relief: (1) assault and battery against R&M and CEI under a respondeat superior theory of liability; (2) negligent hiring against R&M and CEI for hiring Martin; (3) negligent retention of an unfit employee against R&M and CEI for failing to let Martin go after he exhibited threatening and improper behavior against the plaintiff; and (4) a general negligence claim against R&M and CEI for creating a dangerous work environment, and (5) a negligence claim against SunStates for failing to fulfill its security obligations on the night of the incident. The plaintiff also seeks punitive damages under each count.

### III. Discussion

#### A. Counts One, Two, and Three

Each of the defendants has filed a separate motion to dismiss the complaint under the theory that the Virginia Worker's Compensation Act ("VWCA") offers the exclusive remedy for

3

the plaintiff.* The VWCA provides, in part, that employees' sole remedy for injuries or death "by accident arising out of and in the course of the employment" shall exist under the worker's compensation scheme. Va. Code § 65.2-300. The parties agree that the incident in this case constitutes an "accident" that occurred "in the course of employment." Where they disagree, however, and the sole question the court need address at this stage in the litigation, is whether the incident also falls under the "arising out of" prong of the statute. The defendants argue that it does and that the plaintiff's lawsuit is barred by the exclusivity provisions of the VWCA. The defendants claim, in effect, that the plaintiff has pled herself into the ambit of the VWCA by accusing the defendants of creating a dangerous work environment. In support, the defendants point to Va. Code § 65.2-301, which deals specifically with workplace sexual assaults. Section 65.2-301 provides that employees who are sexually assaulted in the course of their employment are deemed to have suffered an injury arising out of the employment when "the nature of [their] employment substantially increases the risk of such assault." The defendants argue that the plaintiff herself has claimed that the nature of her employment, by way of the alleged negligence and wrongdoing of the defendants, increased the likelihood of a sexual assault. As a result, they contend that the plaintiff cannot proceed outside the VWCA. In contrast, the plaintiff asserts that the assault was of a purely personal nature that was completely unrelated to her employment, thus exempting her claim from the worker's compensation bar.

In their motions to dismiss, the defendants rely primarily on three cases: R&T Investments, Ltd. v. Johns, 228 Va. 249 (1984); Plummer v. Landmark Communications, Inc.,

---

* The defendants' motions are filed pursuant to both 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure, owing to conflicting rulings within the Fourth Circuit. Compare Graves v. Cook, 2002 U.S. Dist. LEXIS 6794 n.1 at *1 (W.D. Va. April 17, 2002) (analyzing whether the worker's compensation bar applies under Rule 12(b)(6)) with Miller v. Washington Workplace, Inc., 298 F. Supp. 2d 364, 370 (E.D. Va. 2004) (analyzing same under Rule 12(b)(1)). Regardless of which rule applies, the court is to accept all of the plaintiff's allegations as true and the relevant analysis remains the same.

4

235 Va. 78 (1988); and Lynchburg Steam Bakery v. Garrett, 161 Va. 517 (1933). In R&T Investments, an employee was injured when dropping to the floor during the robbery of a bank where she had gone to deposit her employer's money. 228 Va. at 254. The Court found that because robbery is a risk associated with delivering money to a bank, the plaintiff's injuries arose out of her employment. Id. The Court held that the "claimant's regular presence in a branch bank, an environment that is more prone to the violence of robbery, exposed her to a special risk of assault." The Court further explained that "[a]n accident arises out of the employment if there is a causal connection between the claimant's injury and the conditions under which the employer requires the work to be performed." Id. at 252. "The requisite nexus in an assault case is applied if there is a showing that the probability of assault was augmented either because of the peculiar character of the claimant's job or because of the special liability to assault associated with the environment in which he must work." Id. at 253-54 (quotation omitted).

In Plummer, a female newspaper delivery driver was assaulted as she waited in a parking lot to pick up her route's newspapers. She alleged that her employment regularly required her to wait in the dimly-lit and dangerous parking lot, increasing her risk of attack. The Supreme Court of Virginia held that the employee's injuries arose out of her employment because she had been forced to wait for an extended period of time at a site that the employer knew was dangerous, "particularly for women." Id. at 86-87. The Court held that "the plaintiff alleges that the employer had notice of a dangerous condition and failed to protect the employee from such conditions." Id. at 87.

Likewise, in Garrett, the Court found that an incident arose out of the plaintiff's employment when a trespasser entered a workplace and shot the employee in the eye. The employer had known of the trespasser's presence for some time, and the Court stated that "[s]o

5

long as the [trespasser] remained upon the premises with the knowledge and acquiescence of the foreman, armed, as he was with a potentially dangerous instrumentality, the hazards of employment were increased." Garrett, 161 Va. 520. The Court found that these facts demonstrated that the employee's injuries were sufficiently related to the plaintiff's employment to establish liability under the worker's compensation scheme. See also Roberson v. Whetsell, 21 Va. App. 268, 270 (1995) (employee shot as he drove from place of work to employer's main office past a dangerous housing project; incident arose from employment because "exposure to gunfire was heightened by the environment in which he worked"); Evans v. Sutton, 32 Va. Cir. 343 (Richmond Cir. Ct. 1994) (incident in which physical therapist was improperly touched by patient arose from employment when victim's supervisor was aware of patient's advances but "nevertheless required plaintiff to continue providing treatments to him").

The defendants argue that the facts as alleged in the plaintiff's complaint amount to a similar scenario. The plaintiff has claimed that her employers' negligence, in hiring and retaining Martin, as well as failing to properly maintain a safe work place, substantially increased the risk that the plaintiff would be sexually assaulted. As such, the defendants argue that the risk of assault was "associated with the environment in which [the plaintiff] must work," and the worker's compensation statute bars any recovery in tort. R&T Investments 228 Va. at 253-54. Boiled to its core, defendants' point is that the plaintiff should not be able to have it both ways: she cannot claim that the defendants were negligent in creating a place of employment that increased the risk she would be assaulted, and then also claim that the assault did not arise from the nature of her employment with those same defendants.

The plaintiff contends that the defendants are applying an erroneous "potential risk" test instead of the appropriate "actual risk" test. The "actual risk" test holds that for an injury to properly fall within the domain of the VWCA:

> [T]he causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.

Id.

In other words, the VWCA does not apply to each and every injury that occurs at a workplace. The proper focus, the plaintiff contends, is whether the injury was personal in nature and thus not part of the "actual risks" associated with the employment.

The plaintiff points to cases that it contends reflect the Virginia Supreme Court's current thinking regarding the VWCA and sexual assaults. The plaintiff claims that Butler v. Southern States Cooperative, Inc., 270 Va. 459 (2005) is dispositive of the instant case. In Butler, the plaintiff was a female employee of an agricultural cooperative whose job responsibilities included operating the cash register, scheduling and making deliveries, performing inventory checks, and other general duties. Id. at 462. While at work one day, a male co-worker tried to kiss her and otherwise assaulted and battered her. Id. The employer knew that the assailant had previously been convicted of felony rape. The plaintiff also alleged that on earlier occasions the assailant had told the plaintiff that he wanted "to date" her and that he "always got what he wanted." Id. The plaintiff sued the employer for negligent hiring and respondeat superior liability for the assault and battery. Id. at 463. The employer filed a special plea in bar under the VWCA. Id. As in this case, the defendant argued that the plaintiff had alleged that the employer increased the risk of sexual assault by hiring and retaining the assailant and, therefore, a causal

7

connection existed between the plaintiff's injuries and the conditions under which she was required to work. The Court rejected that argument and stated that "[w]e have consistently held that when an assault 'is personal to the employee and not directed against her as an employee or because of her employment, the injury does not arise out of the employment.'" Id. at 466 (quoting Richmond Newspapers v. Hazelwood, 249 Va. 369, 373 (1995)). The Court further explained that because the assailant's "actions were the result of his asserted personal attraction to Butler," her injuries could not "fairly be traced to her employment as a contributing proximate cause." Id. The Court overturned the ruling on the defendant's plea in bar and allowed the case to move forward.

In another recent case, Auriemma v. Logan's Roadhouse, Inc., No. 7:12cv00284, 2012 U.S. Dist. LEXIS 165194 (W.D. Va. Nov. 19, 2012) (Wilson, J.), the Court relied heavily on Butler to determine whether an employer was immune from a suit stemming from a workplace sexual assault. The plaintiff, who worked for the defendant as a waitress, was sexually assaulted by a co-worker who had backed her into a food storage cabinet. Id. at *2. The plaintiff claimed that the co-worker had a known propensity for violent and sexually assaultive behavior. Id. at *3. In particular, she alleged that the male co-worker "had sexually assaulted another female server, that management tolerated his conduct, and that the workplace was permeated with various forms of sexually harassing behavior." She further alleged that the "workplace environment perpetuated the types of behavior and attitudes that eventually led to the sexual assault by her coworker." Id. at *3. In denying the defendant's motion to dismiss brought under the exclusivity provisions of the VWCA, the Court held that the allegations in the plaintiff's complaint "might establish that her coworker's assault was personal to her (and therefore did not 'arise out of her employment') . . . ." Id. at *18.

8

In Richmond Newspapers v. Hazelwood, 249 Va. 369 (1995), the Supreme Court of Virginia also relied on the personal nature of an attack to deny dismissal under the VWCA. In that case, the plaintiff was sexually assaulted by a male coworker on numerous occasions. Id. at 375. The Court held that the injury did not arise out of the plaintiff's employment because it was "of a personal nature and not directed against the recipients as employees or in furtherance of the employer's business." Id. See also Reamer v. Nat'l Serv. Indus., Inc., 237 Va. 466 (1999) (holding that the VWCA did not bar the plaintiff's negligence action against her employer because "nothing in the nature of employment in a furniture-rental store increases the risk of rape and forcible sodomy," and finding that "unlike the assaults in Johns and Plummer, the multiple sexual assaults Ms. Reamer suffered were purely personal in nature, both in motivation and in consummation"); Carr v. City of Norfolk, 15 Va. App. 266, 269 (1992) (holding that a sexual assault on female police officer by co-employee was "personal and not directed against her as an employee or because of her employment" and that "employment at the police department did not substantially increase the risk of sexual assault"); Morgan v. MDC Holdings, Inc. 54 Va. Cir. 45, 2000 WL 1210879, at *5 (Fairfax Cir. Ct. May 11, 2000) (holding that the VWCA's exclusivity bar did not apply because the assaults were "purely personal in nature . . . did not arise out of the plaintiff's employment . . . and w[ere] [not] in any manner in furtherance of the corporate defendant's business").

Although each side has made compelling arguments, the court believes that the plaintiff's case states the better position, at least in terms of the Virginia Supreme Court's more recent treatment of the issue. As in Butler and Hazelwood, the attacker had a history of unwanted sexual advances directed towards the plaintiff. The attack appears to be "the result of his asserted personal attraction to [the plaintiff]," Butler, 270 Va. at 466, and not anything related to

9

the conditions of her employment. The mere fact that Hartman and Martin worked together is inadequate to state as a matter of law that the plaintiff's injuries arose out of her employment. See City of Richmond v. Braxton, 230 Va. 161, 164 (1985) (holding that "it is not sufficient to find that the employment is what brought the parties into close proximity" to apply the VWCA bar). And even if the defendants should have known that Martin posed a danger to the plaintiff because of his history of sexual assault, this does not automatically transform his personal violent predilections and attraction to the plaintiff into a condition of employment for purposes of the VWCA. See Morgan, 2000 WL 1210879 at *5 ("[I]t is clear that [the plaintiff's] allegations that her employers knew that [the attacker] had assaulted other women do not bring the sexual assaults against her within the purview of the Act.") (citing Hazelwood, 249 Va. at 374-75). Here, it is apparent that this was not a random assault that resulted because of "the conditions under which the employer requires the work to be done," Butler, 270 Va. 465, but was instead personal in nature between two individuals who happened to be co-workers. Although the defendants are correct in noting that the cases cited by the plaintiff do not explicitly discuss Va. Code § 65.2-301(A), most involve sexual assaults of one kind or another and, importantly, focus on the personal nature of the attack as removing the claim from the VWCA. See Butler, 270 Va. at 464 (explicitly deciding not to address § 65.2-301 because an analysis under the other, broader exclusivity provisions of the VWCA was dispositive in determining that the injuries did not arise out of the plaintiff's employment). The court is convinced that, like in Butler, this was a personal attack that was "in no way in furtherance of [the employers'] business and, therefore, . . . cannot fairly be traced to her employment as a contributing proximate cause." Id. at 466.

Furthermore, the court believes that, at least with respect to the first three counts, the defendants' position would achieve an illogical result: employers who diligently screened job

allegations in Count Four concern the same issues alleged in Counts One through Three. For example, the plaintiff alleges that CEI and R&M were negligent in failing to conduct background checks on their new hires. Issues such as this are properly addressed within the first three counts of the complaint, which will survive the motion to dismiss. To the extent that Counts Four and Five raise a unique issue, it concerns the condition of the parking lot where the plaintiff was attacked. As noted, the plaintiff alleges that the parking lot was poorly lit, in the rear of the building, and in a high crime area. Further, she alleges that there was inadequate security on the night of the attack. In so framing her general negligence claim, the plaintiff has focused on the conditions of her employment, as opposed to the nature of the harm presented by Martin. Conditions of employment, including the safety of a parking lot in which an employee is forced to park, are directly related to an employee's job such that they fall within the traditional scope of the VWCA. Just as an employee who was injured because his employer failed to remedy a slippery floor would be limited to recovery under the workers' compensation scheme, the plaintiff here cannot proceed in tort under a general negligence theory that rests so heavily on the conditions of the workplace. See County of Buchanan School Bd. v. Horton, 35 Va. App. 26, 28 (2001) (holding that plaintiffs who prove a defect in the condition of workplace steps can be compensated through the VWCA). Here, the plaintiff is essentially stating that the parking lot was "defective" in that it was unreasonably dangerous, and that the defendants failed to take the appropriate steps to correct it. The claims advanced in Counts Four and Five are akin to that of an employee who falls in the employer's parking lot and must lay unattended for a prolonged period because the lot is not properly patrolled. Simply put, the plaintiff's allegations in Counts Four and Five relate to the conditions under which she was forced to perform her job, while the remainder of the complaint focuses on the nature of the harm posed by Martin. This is a

applicants (and thereby did not create a dangerous work environment), but who nonetheless had an employee suffer an assault by a coworker would <u>not</u> enjoy the tort immunity provided by the VWCA, while, on the other hand, employers who were negligent in screening applicants or investigating complaints <u>would</u> enjoy tort immunity under Va. Code § 65.2-301 because they created an environment where the "nature of the employment" included an increased risk of sexual assault. The court agrees with the plaintiff that the General Assembly could not have intended to create a result that so rewards employers for their mistakes. See Fox v. Rich Prods. Corp., 34 Va. Cir. 403, 410 (Winchester Cir. Ct. 1994) ("By implication, [Va. Code. § 65.2-301] makes it clear that [sexual assault] claims . . . are primarily the domain of tort law and not worker's compensation law.").

Lastly, that the incident was personal in nature is crystallized even further when one considers the issue in the light of the plaintiff's allegations as to Counts Four and Five, the general negligence claims. In those sections of the complaint, the plaintiff focuses on dangerous conditions clearly arising from her working conditions. For example, the plaintiff complains that the parking lot at the facility was dimly lit, had poor visibility, and was located in the rear of the building in a high crime area. These allegations focus on the general conditions of the workplace and highlight how the nature of the harm specific to this case—Martin's personal attraction to the plaintiff—is different from the traditional notions of workplace conditions. Accordingly, the court believes that the exclusivity provisions of the VWCA do not apply to the personal harm alleged in Counts One, Two, and Three, and will deny the defendants' motions to dismiss.

**B.     Counts Four and Five**

As indicated above, the court considers the allegations in Counts Four and Five to raise an issue that falls within the ambit of the VWCA. The court first notes that a number of the

difference of kind not degree, and one that sharpens the line between when the VWCA applies and when it does not. Stated differently, in Counts Four and Five, the very essence of the cause of action turns on the condition of the workplace, and not on the predatory intent of a co-worker totally unrelated to the employee's business, the place that business is located, or the manner or means in which its business is conducted, as in Counts One through Three.

The court is convinced that a claim that rests upon the proper maintenance of a worksite, as Counts Four and Five do, is properly compensable under the VWCA, and not in tort. Accordingly, the court will grant CEI's and R&M's motions as to Counts Four. Resolution of Count Five depends on the applicability of the VWCA to SunStates as a statutory co-employer or co-employee. This is discussed immediately below.

### C. Applicability of the VWCA to SunStates

Having decided that the VWCA bars the negligence claims relating to the conditions of the plaintiff's employment, it becomes necessary to decide whether SunStates should be deemed a statutory co-employer or co-employee of the plaintiff. If so, the bar would apply to the plaintiff's claim in Count Five against SunStates as well. See Va. Code 65.2-302.

When an employee's injuries arise from the conduct of a third party, an "other party" under the WVCA, she may recover in a tort action against that party aside from receiving statutory compensation from the employer. See Va. Code 65.2-309. The Supreme Court of Virginia has held that "[t]o be an 'other party,' a defendant must have been a stranger to the trade, occupation, or business in which the employee was engaged when he was injured." Peck v. Safway Steel Prods., Inc., 262 Va. 522, 525 (2001). The Court has recently held that a defendant remains a stranger to the trade unless it is performing a task that is an essential part of the employer's business. See Napper v. ABM Janitorial Servs., 726 S.E. 2d 313, 318 (Va. 2012)

13

("While janitorial services may be considered essential to every business in the Commonwealth for obvious reasons, it does not follow that janitorial services are an essential part of every employer's particular trade, business or occupation.") (emphasis in original). Thus, it is necessary to determine whether by providing its security services to the facility, SunStates was performing an essential part of the employers' business.

In Fowler v. Int'l Cleaning Serv., Inc., 260 Va. 421 (2000), the Court considered "whether the provision of cleaning and janitorial services is a part of an [employer's] trade, business or occupation." Id. at 428. The defendant in that case contracted to provide cleaning services at a Sears retail location. In holding that the cleaning company was not a stranger to Sears' business, the Court noted that the two parties worked together to maintain the premises. They shared responsibility for ensuring that the store was clean, simultaneously contributing to "Sears' goal of making its store clean, attractive, and safe . . . ." Id. at 428. The Court determined that the cleaning company was performing part of the employer's business, and barred the common law tort action.

In Bosher v. Jamerson, 201 Va. 539 (1966), the Court likewise barred a suit brought by an injured employee of a general contractor against a subcontractor engaged in hauling sand to a construction site. In addition to delivering the sand, the subcontractor was also involved in spreading it inside the foundation area to establish a base six inches deep. The Court determined that this comprised "part of the trade, business or occupation" of the general contractor. Id. at 542. Therefore, the subcontractor was not a stranger to the employer's work and not an "other party" amenable to suit outside the VWCA. See also Whalen v. Dean Steel Erection Co., Inc., 229 Va. 164, 166 (1985) (subcontractor hired to erect steel beams at a construction site deemed not a stranger to the work of a general contractor).

14

In contrast, in Napper, the Supreme Court of Virginia held that a plaintiff who slipped and fell in the common area of a multi-tenant office building was permitted to pursue a tort action against the cleaning company with which it contracted to provide janitorial services throughout the building. 726 S.E. 2d at 319. The Court noted that the employer, Kastle, merely leased space in the building, and that it was the property management company who contracted with the cleaning company. Further, Kastle did not work with the cleaning company in any way and had no responsibility to clean any of the common areas, including the lobby where the plaintiff was injured. In fact, Kastle employees were expressly disallowed under the contract from cleaning these areas. The Court held that although every business might need janitorial services of one kind or another, the manner in which those services were provided did not qualify as "part of" the employer's business for purposes of the VWCA.

The Court believes this case is more like Fowler, Bosher, and Whalen than Napper. As SunStates points out, the plaintiff has alleged that the three defendants operated together to ensure proper security measures were taken at the facility. SunStates has been party to a contract with CEI and R&M to provide security at the facility for the past eight years. More importantly, in the Amended Complaint, the plaintiff alleges that the three were equally responsible for maintaining the premises. The plaintiff alleges that SunStates was to "act in concert with [CEI and R&M] to discharge [their] duties . . . to provide security and protection to persons providing labor at the Facility." (Docket No. 52, at ¶ 50.) It also notes that "SunStates, in conjunction with R&M and CEI, took control of parts of the Facility and the Parking Lot," and was "discharging R&M and CEI's duties" in providing its services. (Id. at ¶¶ 168, 169.) According to the facts as alleged by the plaintiff, it seems clear that SunStates was performing an essential part of CEI and R&M's business in carrying out its contract. The plaintiff has alleged that the three companies

15

cooperated with one another in ensuring the facility would be safe, and as such it cannot be said that SunStates was a "stranger to the work" who can be sued outside the VWCA. Accordingly, the court will grant SunStates' motion to dismiss Count Five of the complaint.

IV. **Conclusion**

The court holds that because the attack against the plaintiff was personal in nature, it is not covered by the exclusivity provisions of the VWCA, and Counts One through Three must go forward. The court further holds that the general negligence claims alleged in Counts Four and Five of the complaint fall inside the ordinary purview of the types of harm associated with the workplace, and dismisses the general negligence claim against CEI and R&M. For the same reason, and because SunStates is a statutory co-employee of the plaintiff, the court also dismisses Count Five.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This ____ day of March, 2013.

_____
Chief United States District Judge